IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROSALETY BARNETT, et al.,

Plaintiffs,

v.

COUNTY OF CONTRA COSTA, et al.,

Defendants.

NO. C04-4437 TEH

ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO AMEND

This matter comes before the Court on Plaintiffs' motion for leave to amend their complaint. After carefully considering the parties' written arguments, the Court finds oral argument to be unnecessary and now GRANTS Plaintiffs' motion for the reasons discussed below. The parties shall appear for a further case management conference on June 28, 2010, at 1:30 PM.

**BACKGROUND**

Plaintiffs filed this case in 2004, contending that their constitutional rights were violated by Defendant Contra Costa County's now-discontinued policy of performing visual body cavity searches and strip searches on all persons arrested and housed prior to arraignment. Initial discovery revealed that Rosalety Barnett, the original named plaintiff, was not searched pursuant to Defendants' blanket policy concerning pre-arraignment searches and was therefore an inappropriate class representative. The Court disqualified Plaintiffs' second proposed named representative, Peter Morganelli, because he was arrested for a felony and not a misdemeanor.

In late 2007, Plaintiffs filed a second amended complaint naming Adeline Chan as a third proposed class representative. Following months of ultimately unsuccessful settlement efforts between the parties, this Court granted Defendants' motion for summary judgment on Chan's state law claims but denied the motion as to Chan's Fourth Amendment claim under 42 U.S.C. § 1983.

The Court subsequently certified the following class:

> All persons, since October 20, 2002, and continuing until Defendants' prior custom and policy was brought into compliance with the law on June 1, 2003, or such other more recent date when the policy was implemented, who were arrested on any misdemeanor or lesser charge not involving weapons, controlled substances, or felony violence, and who were subjected to a uniform and indiscriminate (blanket) strip/visual body cavity search(es) by defendants before arraignment at the Contra Costa County Jails without any individualized reasonable suspicion that they were concealing contraband. This class may also include arrestees who were subjected to subsequent blanket strip searches before arraignment after the initial strip search, without any reasonable individualized suspicion that they had subsequently acquired and hidden contraband on their persons.
>
> Also excluded from the class are those otherwise eligible arrestees who (1) have a history of at least one prior conviction or two prior arrests for excludable offenses within the last five years; (2) have a current probation condition which includes consent to search; (3) upon arrest or detention, exhibit behavior or circumstances indicating they may be a danger to himself/herself or others; [or] (4) are strip searched after arraignment.

Nov. 3, 2009 Order Granting Pls.' Mot. for Class Cert. at 8. Following the Court's order, the parties stipulated to delay class notification pending mediation.

Before the scheduled mediation date, the United States Court of Appeals for the Ninth Circuit issued its en banc decision in *Bull v. City & County of San Francisco*, 595 F.3d 964 (9th Cir. 2010). In that decision, the court overruled *Giles v. Ackerman*, 746 F.2d 614 (9th Cir. 1984) (per curiam), a case on which this Court relied when it denied summary judgment as to Plaintiff Chan. *Bull*, 595 F.3d at 977-81. The prior rule, as set forth in *Giles*, 746 F.2d at 615, was that "arrestees for minor offenses may be subjected to a strip search only if jail officials have a reasonable suspicion that the particular arrestee is carrying or concealing contraband or suffering from a communicable disease." In overruling *Giles*, the *Bull* court

explained that searches of arrestees who are housed in custody with the general jail population must be analyzed following two Supreme Court decisions: *Bell v. Wolfish*, 441 U.S. 520 (1979), and *Turner v. Safley*, 482 U.S. 78 (1987).  "*Bell* held that a mandatory, routine strip search policy applied to prisoners 'after every contact visit with a person from outside the institution,' without individualized suspicion, was facially constitutional." *Bull*, 595 F.3d at 974 (quoting *Bell*, 441 U.S. at 558).  "While recognizing that the institution might have adopted alternatives less intrusive than a blanket policy of performing strip searches, the Court nevertheless deferred to [jail] officials, explaining that the officials' decision to adopt the strip search procedure 'has not been shown to be irrational or unreasonable.'" *Id.* at 973 (quoting *Bell*, 441 U.S. at 559 n.40).

> *Turner* directs courts to consider whether the challenged restriction was "reasonably related to legitimate penological interests."  By considering the reasonableness of a search policy in a detention facility context, we must consider the existence of a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and "the existence of obvious, easy alternatives" as evidence that the regulation "is an 'exaggerated response' to prison concerns."  With respect to these factors, the Court reiterated the need to defer to "the informed discretion of corrections officials."

*Id.* at 973 (citations and footnote omitted) (quoting *Turner*, 482 U.S. at 89-91).

Following the en banc decision in *Bull*, this Court granted Defendants leave to file a motion for reconsideration of the Court's order granting class certification and its order granting in part and denying in part summary judgment as to Plaintiff Chan.  After Defendants filed their motion, the parties agreed that the *Bull* decision "constituted a change of law necessitating reconsideration of prior rulings in this case, since it articulated a different theory of liability for evaluating whether jail strip searches violate the Fourth Amendment when conducted prior to housing inmates in the general population."  Apr. 22, 2010 Stip. & Order Re: Hearings & Briefing Schedules at 2.  The parties further agreed "that the Motion for Summary Judgment should be granted as to the claims of Plaintiff Adeline Chan and all members of the class who were only strip searched once prior to housing." *Id.*

3

1  The parties disagreed as to whether Plaintiffs should be entitled to amend the
2 complaint to add Vanessa Hunt as a named plaintiff and assert claims on behalf of a proposed
3 class of forty-seven female arrestees who were allegedly subjected to a second strip search
4 prior to being housed. Plaintiffs' motion to amend the complaint was filed on May 10, 2010,
5 and is now before the Court.

6  The proposed amended complaint alleges that Plaintiff Hunt was strip searched at the
7 Martinez Detention Facility upon intake and then handcuffed. Hunt further alleges that she
8 was:

> handcuffed and chained during transport, and remained in
> handcuffs upon arrival at West County Detention Facility until
> she was subjected to the second strip search. She was segregated
> in a small group of female inmates who were also transported
> from the Martinez Detention Facility to the West County
> Detention Facility, and never intermingled with other inmates
> who had not also been strip searched and handcuffed.

Proposed Third Am. Compl. ("TAC") ¶ 11. Plaintiffs allege that it was Defendants' "policy, practice, and custom" to subject female detainees to "second, successive strip and visual body cavity searches without having[] a rational penological purpose for such second strip search[es]." *Id.* ¶ 14. The proposed TAC defines the following putative class:

> [A]ll female arrestees who were members of the class previously
> certified in this action, and who, in the period from and including
> two (2) years prior to the filing of the original Complaint on
> October 20, 2002, and continuing until June 1, 2003, were
> arrested and subjected to a second, successive strip and/or visual
> body cavity search prior to being housed at the CONTRA
> COSTA County Jail without defendants having a valid
> penological purpose for such second strip search.

*Id.* ¶ 20.

## DISCUSSION

The time for filing an amended complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1) has long since expired. Thus, any amendment would be allowable only under Federal Rule of Civil Procedure 15(a)(2), which provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The

4

1 court should freely give leave when justice so requires." In deciding whether to grant leave
2 to amend, a court should consider the following factors: bad faith, undue delay, repeated
3 failure to correct deficiencies by prior amendment, prejudice to the opposing party, and
4 futility of amendment. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 & n.3 (9th Cir.
5 1987). The non-moving party bears the burden of demonstrating why leave to amend should
6 not be granted. *Genentech, Inc. v. Abbott Labs.*, 127 F.R.D. 529, 530-31 (N.D. Cal. 1989).

7 In this case, the Court agrees with Plaintiffs that the proposed TAC narrows the claims
8 previously asserted and does not assert a new claim. All members of the proposed class were
9 members of the class previously certified by this Court, and the claims arise out of the same
10 "conduct, transaction, or occurrence" previously alleged and therefore relate back to the date
11 of the original pleading under Federal Rule of Civil Procedure 15(c)(1)(B). This case has
12 always been about the constitutionality of the blanket strip search policy employed by
13 Defendants, and the certified class explicitly "include[d] arrestees who were subjected to
14 subsequent blanket strip searches before arraignment after the initial strip search." Nov. 3,
15 2009 Order Granting Pls.' Mot. for Class Cert. at 8. Admittedly, the legal theory has
16 changed – from challenging searches on the basis that they were conducted "without any
17 reasonable individualized suspicion that [arrestees] had subsequently acquired and hidden
18 contraband on their persons," *id.*, to challenging searches on the basis that they lacked a
19 "valid" or "rational penological purpose," TAC ¶¶ 18, 20. However, this change was
20 necessitated by *Bull*'s change in the law governing what constitutes a Fourth Amendment
21 violation in the Ninth Circuit. Plaintiffs' claim itself – that the blanket strip search policy
22 violates the Fourth Amendment – remains unchanged.

23 The Court finds no undue delay in Plaintiffs' seeking the proposed amendment, nor is
24 there any evidence that Plaintiffs are seeking leave to amend in bad faith. Although this case
25 has been pending for six years, Plaintiffs are now attempting to correct a deficiency that
26 resulted from a February 2010 ruling by the Ninth Circuit, and they filed their motion for
27 leave to amend in May 2010. This is Plaintiffs' first attempt to amend their complaint to
28 reflect the state of the law following the en banc *Bull* decision, and the Court does not find a

5

three-month delay in seeking leave to file an amended complaint to be undue.[1]  Similarly, Defendants have failed to make any showing that they would be prejudiced if leave to amend were granted.

Defendants have argued that the proposed amendment would be futile both because the challenged policy is constitutional and because the proposed new class does not meet the requirements of Federal Rule of Civil Procedure 23.  However, the Court declines to consider either set of arguments at this time.  As discussed below, such arguments would be more properly raised on a motion for summary judgment or in opposition to a motion for class certification by Plaintiffs.

First, although there is authority – not cited by Defendants – that leave to amend may be denied where the proposed amendment would be defeated by summary judgment, such authority does not appear to contemplate the sort of evidence-intensive case at issue here, nor does it stand for the proposition that granting leave to amend and subsequently entertaining a motion for summary judgment would be improper.  *See Gabrielson v. Montgomery Ward & Co.*, 785 F.2d 762, 765-66 (9th Cir. 1986) (affirming district court's denial of leave to amend to state a claim against a health care plan where the plan's clear language indicated that plaintiff was not entitled to benefits under the plan, and the proposed amendment would therefore have been defeated at summary judgment).  Indeed, the more ordinary course is to consider the pleadings and deny leave to amend based on futility only if the proposed amendment would be subject to dismissal under Federal Rule of Civil Procedure 12(b)(6). *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).  Here, Defendants do not challenge the sufficiency of the proposed pleadings, and this Court therefore does not find that leave to amend would be futile.  Defendants seek to rely on external evidence to

---

[1] The Court does not find Plaintiffs' description of prior delays in this case to be relevant to its consideration of this motion.  Accordingly, Defendants' motion to strike certain portions of Plaintiffs' moving papers that discuss settlement negotiations is hereby GRANTED.  However, Defendants' request for attorneys' fees is DENIED.  Defendants have not persuaded the Court that a fees award is proper in this instance.  Addtionally, the Court does not find the challenged statements to be inflammatory or unduly prejudicial.  Indeed, much of the challenged portions recite or rely on statements made by the parties to the Court in a joint case management statement filed on February 2, 2009.

6

1 demonstrate that the challenged policy is constitutional, but these evidence-based arguments
2 would be more appropriately raised on a motion for summary judgment.

3 Second, Defendants have cited no authority to support the proposition that, in
4 deciding whether to grant leave to amend, a court should consider whether a proposed
5 amendment stating a class claim satisfies the requirements of Rule 23. To the contrary, the
6 Ninth Circuit long ago explained that "compliance with Rule 23 is not to be tested by a
7 motion to dismiss for failure to state a claim," *Gillibeau v. City of Richmond*, 417, F.2d 426,
8 432 (9th Cir. 1969), and it follows from the above discussion that Rule 23 should also not be
9 tested on a motion for leave to amend. Moreover, Plaintiffs stated in their reply that "[i]f
10 Defendants are correct, and only ten class members fit the description of the subclass defined
11 in the Third Amended Complaint, . . . [i]t is probable that joinder will be a feasible way to
12 litigate their claims." Reply at 8. Thus, it remains to be seen whether Plaintiffs will even
13 seek to certify a class based on the TAC's allegations.

### CONCLUSION

In light of all of the above, the Court exercises its discretion to GRANT Plaintiffs leave to file their proposed third amended complaint. The motion hearing scheduled for June 28, 2010, is hereby VACATED. Plaintiffs shall file their amended complaint on or before **June 23, 2010.** Defendants may re-raise their evidence-based arguments and arguments against class certification at an appropriate time.

IT IS FURTHER ORDERED that the parties shall appear on **June 28, 2010, at 1:30 PM**, for a further case management conference. The parties shall meet and confer and file a joint case management conference statement on or before **June 23, 2010.** In that statement, the parties shall discuss, among any other relevant issues: (1) when they intend to file their stipulation to dismiss with prejudice Plaintiff Chan and the prior class claim, except for the claim discussed in this order; (2) whether Plaintiffs intend to file a motion for class certification, whether Defendants intend to file a motion for summary judgment, and, if so, proposed schedules for any such motions; (3) the scope of and proposed schedules for

7

completing any remaining discovery; (4) whether further settlement efforts might be productive and, if so, whether a settlement conference before a magistrate judge would be helpful; and (5) a proposed trial date and estimated length of trial.

**IT IS SO ORDERED.**

Dated: 06/18/10

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT